The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Good afternoon. The first case on our docket is 19-60355. It's Santa-Zacaria v. Garland. And I don't want to mispronounce your name. Mr. Is it Osorio? Yes, Your Honor. We'll hear from you first. Thank you, Your Honor. May it please the court. My name is Ben Osorio and I represent the petitioner in this case, Ms. Santos-Zacarias. The primary issue before this court is whether the agency gave reasoned consideration to Ms. Santos' claims for relief. Although there are a number of different issues, I'm going to try to boil this down to three main issues for the withholding claim and one issue for the claim for protection under the Convention Against Torture. The first claim or the first main issue I see under the withholding is that Ms. Santos put forth two particular social groups that should have been analyzed separately and it seems that both the immigration judge and the board have conflated those in their analysis. The second one is the board was the first one to find past persecution on account of a protected ground and then they conducted their own rebuttal of the future presumption analysis that had not been conducted by the IJ, but when they conducted that, they conducted that in an improper fashion. The third and last thing under withholding that I'd like to discuss is the failure to address the pattern and practice claim that was specifically requested both before the immigration judge and the board. With regards to the protection under the Convention Against Torture, really no analysis has ever been conducted and that pretty much sums up the argument for CAT. Going into each of those individually, I know that the government's position is that it doesn't matter that the PSGs were conflated because colloquially, we often refer to these minority groups as LGBTQ or LGBTI. However, if you delve into the record, there is specific evidence that transgender individuals run a heightened risk and are subject to more harm and  that LGBTQI sort of initialization. So I don't think that that can be minimized and it matters because when they were rebutting the fundamental change of circumstances, they should have conducted that a separate analysis with regards to each and looked at the risk of future harm with regards to each one and by conflating them, they've somehow been able to then combine those together to push back on the presumption when they may not have been able to do that individually. So when you look at the evidence that they use specifically to rebut the presumption, they point to that there is a Congresswoman in Guatemala who's lesbian. They also point to the fact that homosexuality is not illegal. The problem with that is then their only reliance on the gender identity particular social group is that they point to a law allowing people to change their name on their birth certificate. But that again is the only thing supporting the transgender. It shouldn't go to supporting the homosexual claim that was put forth under the sexual orientation. The other sort of issue with the conflation is it ends up leading to, you know, sort of a mishmashing of all the evidence and again, I understand that we refer to these groups often in the same term, but like it doesn't actually go into the specifics and interact with the record with regards to what the expert declaration says with regards to what the State Department says and the State Department report actually says that even though the law has changed with regards to registering your gender identity at the record at page 323. It specifically says that the officials were blocking transgender individuals from being able to change their identity. So even though the law may exist in practice, it's not actually or the law may exist in sort of reality. It's not actually being practiced and the other thing that is problematic about the fundamental change of circumstances analysis is the board sets no baseline. So we have no idea what they're using as the basis. They say, okay, well homosexuality is not illegal. Well, if you look in the record, you'll find out that homosexuality has never been illegal in Guatemala. So, I mean, so if she wasn't, if she's established past persecution on account of a protected ground, how can it then be a fundamental change in circumstance when no change has ever occurred? So I think that those are the main problems with fundamental change in circumstance. With regards to the improper rebuttal, there seems to be a significant focus on the actual persecutor. The problem is board law requires us to look at harm to the social group. So regardless of if we know where this persecutor is, who unfortunately raped Ms. Santos when she was 12 years old, have country conditions changed with regards to these two different particular social groups? And I think that the massive amount of evidence points that it doesn't. The other problem is with the improper rebuttal is the burdens on the government to rebut that presumption. The government put forth no evidence in this case. And so now the burden has improperly been shifted to Ms. Santos to provide evidence of why that fundamental change hasn't occurred when the government should have had that burden. Even the government in this case concedes that the evidence is equivocal. And that's why we filed our 28J letter with the court because once they concede that it's equivocal, how can it be more convincing to choose equivocal evidence if the burden is on the government? And so for those reasons on the fundamental change of circumstances, we alone believe that it should be remanded. And again, the pattern and practice claim is very similar to our CAT claim. What about, I mean, for what you've said, I'm sympathetic to the record supporting that there hasn't been a change circumstance, but the independent finding was that it was rebutted because she could relocate. But under this court's own precedent in Singh v. Sessions, the government has a burden to then point to a place where she can relocate. And so in my review of the record, I don't know where the government is pointing to that she can relocate. She was living in San Pedro Sula Loma with her family before she left after she was raped and she revisited there twice for the death of her family and when she was removed and then to say goodbye to her mother. But again, given that the expert declaration seems to indicate that it's not localized the violence against transgender individuals or against homosexual individuals. I don't know how, if this is taking place countrywide, discrimination wide, violence wise, that the government has put forth anything suggesting where she could live. The department at one point did ask a question about Antigua during the individual hearing, but that was never answered conclusively to my recollection. Do you agree that the government in its brief seems to be relying on a cross-examination statement that she answered? Remember, she was given the hypothetical, well, you wouldn't want to go back to the city where you were raped, but there might be somewhere else. And she had a sort of tangled answer. Probably. And from the probably, they infer that's enough, at least with a deferential standard or review. Right, but she repeatedly said, and I don't know that we get to substantial evidence, Your Honor, because I believe that there's been so many illegal errors committed here. I think that we're still in a de novo review before this court, but even if we were in substantial evidence land, just regarding what evidence has been submitted for the rebuttal of the presumption, I think that it's going to be very difficult for them to argue that this equivocating answer from my client is then going to be sufficient to rebut the presumption when you have all of this independent documentary evidence from the State Department, from the UN, from all of these human rights groups. So, you know, in consideration, what is the quality of her answer if she's sitting there saying, I don't know, and she repeatedly states that she's always scared to go back. And again, the government hasn't pointed to a specific place that she would be able to safely relocate. Your asylum claim. Your client was removed twice before in 2008 and 2012. Is this the first time that she's requested asylum? Yes, your honor. To my knowledge, this is the first time that she's requested any type of humanitarian relief. I don't know whether she had counsel before or not. Based off of my review of the record, I apologize. I can't point the court to the page. It looks like it was an expedited order, which means it would have been taking place right at the border. And if she didn't trigger the CFI process, the credible fear interview, she wouldn't have been given an opportunity to apply. So if she didn't raise it, or maybe she didn't know to raise it, she wouldn't have had that opportunity before. But I don't see anything in the A file that would indicate she applied before. Okay. Again, just tell me again the relief. Once the BIA, you are successful in the BIA, overturning the IJ's no past persecution determination, right? That's correct. Then that triggers the fear of future prosecution unless it's rebutted. So the issue before us is, did the BIA point to evidence the IJ had already found to show that there's rebuttal? And if so, are you asking for a remand back to the IJ because essentially you won in the BIA? What's the relief you're requiring? If you have a case to support it, that would be helpful. So specifically, we're asking for a remand for the agency to perform the legal analysis on both of the PSGs, asking them to then utilize the proper standard on rebutting the presumption and place the burden on the government, and then also to consider the pattern and practice claim, and finally to conduct a CAT analysis. And I know that's a mouthful, and I hate honestly bringing that many issues before this court. But if you look at the IJ decision, it's just, I mean, it's a mess. So she conducts all of her fact-finding. She then discounts current country conditions, saying they're not relevant because that's not when Ms. Santos left Guatemala, even though past fear is supposed to be a proxy for future persecution. So that's why we're always looking at what country conditions the individual would return to, and also why we look at a fundamental change in circumstance. So I think it, unfortunately, I don't know that this court can outright grant. I believed that before the board, the board could have done an outright grant. But at this point, I think fact-finding has to go back and take place. So I think it, unfortunately, has to be remanded back to the immigration level, to the immigration court. I'm also very troubled by this sort of blanket statement that the IJ is able to say, and say that I've considered all the evidence, and that be sufficient to then cover her from actually having to engage with the documentary record and engage with the expert witness declaration or any of the country conditions report. The board, at the same thing, does, in their footnote two, they then say, okay, you know, we know that the IJ said this statement, and that's going to be sufficient for us to support her. But how can you support the IJ's decision when she specifically says, I'm discounting all current country conditions? How can she possibly not have ignored relevant evidence? How could she possibly have considered all of the things that should have been made in an individualized determination? And so that, for me, is really at its core the flaw in this decision. I think that the board did the right thing, obviously, on past persecution, but I really don't think that they should have ever engaged in the rebuttal analysis, because that should have been a fact-finder mission. With regards to the pattern of practice claim, it's sort of unclear from the record, again, which, you know, whether they ever conducted one or not, because they do mention at one point a well-founded fear. As the government noted in their brief, that's not actually the right standard, even though I cited at one point, it should be whether there's a clear probability of harm. But there are two ways to establish protection here. It's either the individual harm that the individual has suffered or the individual harm that that person would likely to suffer based off of their specific background and history, but also you can look at the particular social groups. And I think just the fact that we were very explicit both before the immigration judge and the Board of Immigration Appeals that we wanted the pattern of practice claim to be analyzed, given the significant country conditions affecting both gay Guatemalans and transgender Guatemalans, I think that it has to be remanded, again, just for the court or for the immigration court and the agency to make those findings. I really don't know how this court could do anything else, given that the fact-finder has to have a meaningful opportunity to interact with the record evidence. And so, essentially, that sums up our position here today. Thank you, counsel. You saved some time for rebuttal, Mr. Finn. Yes, thank you very much, Stephen Finn, for the United States, or excuse me, for the Attorney General. As to the initial argument petitioner makes regarding the particular social groups at issue here, once the board determined that there had been past harm, and in fact, there was a nexus between a particular social group and the harm, that issue largely recedes because there's been a finding of past persecution. And it is at that point we believe the argument really picks up here today. It is of note that as the board turned its attention to the question of whether or not there had been a rebuttal of the presumption of future harm, that the factual findings the board relied upon regarding the change conditions were entirely those made by the immigration judge. And the point to be made here is that under the regulation, and I'm citing here HCFR 1208.16 AB1I, the evaluation is on the basis of the original claim. The original claim to find past persecution here was a rape of petitioner when she or he was 12 years old. That's the claim that the board had to analyze for both change conditions and ability to relocate. And another point I would make about change in circumstances. Change in circumstances as per the regulation under 1208.16B1IA is a change in circumstances, not a change in country circumstances. If the basis of the original claim had been the country of Guatemala was causing threat to life and freedom, which is the withholding standard. Well, then we might have an issue. But the past persecution was a rape of a 12 year old. And so when the board turned to evaluate the question of the change of circumstances, it focused on that question and appropriately so because that's what the regulation requires. Now, the question on relocation was much more difficult. The immigration judge's findings on relocation had not come, had not been made because it had not risen to the immigration judge's analysis because of course, the immigration judge found no past persecution and no future persecution and relocation was never an issue in her decision. But the Department of Homeland Security cross-examined the petitioner and petitioner acknowledged saying probably that she could relocate. That's enough. That's essentially an admission or a concession. Now the question which we're wrestling with here today is whether the board had the prerogative to look at that evidence in its consideration of the legal issues and the record before it and resolve the legal issue based on that fact and the other facts and specifically, I am referring to page 7 of the record. I want to make a point here that in my brief, in the government's brief, at that time two years ago, we cited the right-hand page of the record. However, I know the court and the clerk's office has been very stringent lately on making sure we cite the record on the left-hand side, which is the court's pagination. So for purpose of this argument, when I cite the record, I will cite the left bottom site page number and in this case, that's 7. Yes. Yes. I think, I mean going back to the beginning, I think I agree with how you've outlined this. The issue before us is the rebuttal determination. In other words, you are disputing past persecution and as you point out, once there's a finding of past persecution, we don't really need to distinguish or parse out the particular social groups. Is that correct? That is correct. Okay. So given that, the focus, your focus here is there's at least substantial evidence to conclude that she could relocate and the evidence is that response statement. To me, that's very thin, right? You don't deny that 11 pages earlier on direct, she categorically said she couldn't relocate, correct? I am looking at right now, your honor, page 151 of the record where petitioner said in response to a question, but if you know of cities that are open to gay and lesbian and transgendered lifestyles, you would rather move to those cities than one you lived in, correct? Yes, probably there is another place where I can live down there, but I don't, but I don't but try to stay here to get this protection. I mean, that's to me. I mean, just, just, you know, pushing a little bit. And my first question was on direct. She was categorical. I can't relocate. Yeah, I asked and she answered. Then she gets asked a question. What would you, would you prefer to live in Shangri-La if it existed instead of the city where you were raped? That's the hypothetical she's asked and she says clearly, yes, and the government is comfortable that the next fragment of a I don't is a concession that she's now recanting what she said on direct and there is some city in Guatemala that she could be safe in. Is that your position? Well, your honor, I would take her statement on page 151 of the record. When you say she changed it and said, I don't, I read that as a hesitation in her response. I said, but I don't, but I try to stay here. In other words, my belief is she was turning her response to saying, but I don't want to go back. I want to stay here where their protection is. I don't read the I don't as a rejection of the first half of that sentence. The question she's asked is, is there, wouldn't you rather be in a safe place than where you were raped? And the answer is yes, the rest isn't even something that was asked and it starts with probably, but you haven't answered my question on direct. Did she say straightforwardly, no equivocation. I can't relocate. I, if you have the site page site, you're on right now. I'm not recalling that specific snippet of the record. I'm sorry. If she did say that, would that at all concern you about relying on this fragment? Excuse me, your honor, please conclude. I'm sorry. Well again, I mean, we are in a world where the IJ didn't make this determination. Yes. So that's a perplexing thing about this case. You may have a thought on that. Is this a new finding made by the BIA? And if it is a new finding, you haven't said that they failed to exhaust in a motion to reconsider or do you think it isn't a new finding because it's premised entirely on other findings made by the IJ. Do you see what I'm getting at? I, I believe I, I do. Okay. So I believe what we're dealing with here is the board had to consider the record it had before us. The question would be if this were returned to the IJ, you have a record that already exists where the parties had the opportunity to cross and to do direct cross-examine and cross-examination on the question of withholding. So the record is what it is at this point. Both parties have had the opportunity to make that call. So the board has to question, the board is facing, do I, we we're looking at here to make that determination when in fact that would be a year after the hearing was conducted. Right, but you've just corrected the IJ and said you were wrong in your assessment of facts as to past persecution. True, but that's a different finding. I mean, that's a different finding. The IJ made no finding as it relates to the question of relocation. Yes. You have to stop right there. I agree. They made no finding. So who made the finding? Well, I would say on the question of country conditions, the board made a finding or excuse me, made a legal determination on rebuttal on change conditions based on clear factual findings of the immigration judge and they cite those very clearly at page 7 of the record. However, the immigration judge did not make clear findings on relocation because the pattern of the immigration judge's decision did not lead the immigration judge to have to make that resolve that question. So if it didn't resolve it, do we give any deference to the statement by BIA that she can relocate? Do we give deference to that at all or are we looking at the same transcript record and it's reviewed de novo, no substantial evidence deference? I, that's a very good question, Your Honor. I believe in this situation, it would be a question of substantial evidence. So it would have to be whether the fact any reasonable fact finder could find to the contrary and that that would be the evaluation the court would have to make. So in terms of deference, I guess you see where I'm getting at. I mean, I think this is a really close call, but I sure would have preferred a fact finder to make it. In other words, you're pointing to it's been a long time. And at least de jure, Guatemala may treat people equally. There are counterfactors to her claim. On the other hand, there's this fragment of her response. This seems like perfect risk for the IJ now that it was reversed on the fundamental premise to revisit. But my point is that both parties have had the opportunity to present on this issue. Relocation was a matter of regular of the regulation, even at the hearing stage. I mean, they had the opportunity to develop the evidence. The immigration judge didn't reach it. So the board is in a sense in not much of a different circumstance in looking and evaluating the evidence and considering the evidence before that as to whether it meets the legal standard. Can you think of any case for us where the board's allowed to make a fact finding when the IJ didn't reach it? Well, I think the closest case that we really have in that we've been discussing is the Contrero-Lagos case on the reformulation of the PSG. And I cited that in the brief and in that instance, we had a situation where the board was presented. It was actually the inverse of this case and that is the board was presented with a question of whether a PSG should be reformulated. It was and they at that point determined to send it back to the IJ for consideration. But it's interesting because the court talks about the prerogative of the board to consider the record and the legal question before it. And so my argument here is that prerogative exists in both directions. If in this, it underlies the situation where the board determined in its prerogative to send it back. If it believes the record is clear enough, it has the prerogative to make the determination. You don't have a case for that because that runs into tension with our law that the BIA cannot make fact-finding. I understand. Case you cite in your brief is the Enriquez case, but that's just a case where records were lost. And so the court, you know, you know what it stands for that doesn't relate to this at all. Well, the problem is that the case law and the regulation, the 2002 final rule on procedures when it's talking about the board's fact-finding opinion or fact-finding authority or lack thereof. It is really talking about extra record eminence. It is really I was reviewing the final rule today and I can give you the page site where this is going on. It's at 67 Federal Register. Let's see page around page, excuse me. Well, that may be the board's view but our case law is pretty clear that they don't do fact-finding. Right, but you're right. I do believe much of that case law is built on matter of ZZO, which it refers back to this rulemaking and I agree that the clear unequivocal standard is the board does not do fact-finding but there is in my review of this based on the Contreras-Lagos case is that there is some small amount of discretion for the court to look at fact-finding and if it believes the fact-finding is clear or the facts in the record under its consideration are clear and here the board used the word acknowledge and it used the word acknowledge when it started the first sentence in the last paragraph on page 7, the second second sentence in the paragraph on page 7 and in the first paragraph on page 8 of its decision or excuse me on page 8 of the record the board was looking to see what the petitioner herself was in fact saying in the record and I agree with you if your representation of the record is correct that I can't remember offhand that you know, yes, she may have in a broad sense said she couldn't relocate but that's what cross-examination is about cross-examination about testing testing the direct examination to see how strong it is and to see the factual representation when she goes back it's twice. She's hiding in her parents house. She gets private transportation. She cuts her hair and puts on men's clothing. This is not someone there's no evidence to suggest. She thinks she can go walk around Guatemala. I know the DHS attorney said in the record. Oh, there are cities in Guatemala have gay festivals in your review of the record or your knowledge of Guatemala. Can you come up with a single city that she should go to? I am not an expert on Guatemala. I know that the DHS made that review that I'm not being snide that is critical the assumption you're presenting to us is this lady in cross acknowledge. There's a safe place there and I'm saying what we better be pretty sure that safe place exists. I don't see that fragment to be an acknowledgement at all myself and I would expect the government would be able to say well here is the safe place. She was right when she acknowledged it, but instead she's hiding in her parents home and we're still going to build our case around that acknowledgement. I believe your honor the evidence in terms of her visits back to Guatemala indicated. Yes that she did hide but on the other hand, she was able twice to return to Guatemala and that's a subjective. I don't believe that to be an objective piece of evidence as to her safety in her community. But then again that we're talking about relocation in the safety in her community is distinct from relocation. The question was being asked was there another place you could live and out if you're your representation is correct in one situation. She said no she couldn't relocate but in another she did acknowledge probably she could although we may dispute whether or not that is a strong piece of evidence. It nonetheless is one the board can rely upon or the IJ. I mean the IJ and the board are going to end up in much the same place here in terms of their evaluation of the evidence. Yeah, I've taken a lot of your time and I think that is a fair statement. I appreciate that's a fair statement of my concern. I'm still slightly wondering why it wouldn't be best to get a straightforward IJ determination win or lose on this just square it up. Is there a place she can be located or not rather than have to be a jump to it and cite this but but you're pressing back you're saying no it's entitled to deference and the finding is supported by her cross-examination statement. That's your position. Yes, it's a position. I would only add to that that again the withholding hearing has been conducted the board in the IJ stand in almost the same position. If this goes back to the IJ the IJ is going to look at the record and read it to make that factual finding the boards in no different position whatsoever than the IJ in that second. I believe it is I agree that the rule is the board doesn't do fact-finding but there is a bit of discretion for the board to look at the record consider the record and ask whether it can resolve a legal question. That's legal question. Yeah. Well, okay, but you know what the struggle we have here your honor's course much of what we're arguing about here today are mixed questions of law and fact, but okay. Yeah, I've asked too many. I've asked too many. I feel like I've dominated. Okay, that's your honor. Great questions. I do want to spend just a moment talking about the substantial evidence question much has been made of the country conditions or the country reports and the voluminous material petition or put into the record on country conditions. I would note that I disagree with petitioners counsel to the extent that he says that the immigration judge dismissed the country conditions evidence. I believe that if you look carefully at pages 72 and 773 of the record that the immigration judge considered the country conditions evidence the Department of State report and said this is a past persecution case going back 1215 years. So this country conditions evidence doesn't really answer but at the very end of that discussion on page 73, she did address essentially the present or the future in saying that the respondent has spent time in Guatemala and it didn't experience discrimination discrimination. Now as we talked a minute ago, your honor, you could take you Nonetheless, she considered the evidence now the as we did in our I would go back to our brief and just point out that we did go through a number of the positions in the reports the country condition evidence and show it wasn't as strong as petitioner makes it out to be nor did it necessarily did it necessarily apply to petitioner one moment on cat and that is simply we believe that the board in its decision on page eight of the record clearly turned its attention to the cat claim and discussed it to make sure that there was substantial evidence. It wasn't overlooked and that the overall body of evidence and fact-finding in the decisions by the board in the IJ indicated there was plenty of substantial evidence to support the cat Thank you, Mr. Finn. Thank you. Sorry. Thank you, your honor. Judge Higgins and I apologize. You just a question about a case site with regards to the pattern practice claim. I would put forth the Cantarero Lagos case as well for saying that each claim must be examined. I would also put forth Erogas Valdez V8 846 F 3rd 806 where a family PSG was put forth and it wasn't analyzed. So I think again, the pattern practice claim must be analyzed. Ms. Santos is actually happy to have the presumption be a legal determination because obviously that puts it in de novo territory before this court. So if again, if the burden is on the government to rebut the presumption and the government has conceded that the evidence of evidence is equivocal then and it has to be more convincing given the government's burden then under de novo review then Ms. Santos should have an opportunity to go back and present her claim or at least force DHS to point to a place that she could possibly relocate. With regards to the motion to reconsider that was possibly mentioned as the government conceded in this brief at page 14 essentially our BIA brief was requesting additional fact-finding and saying that the judge's fact-finding and analysis was insufficient. So they've noted that we've had already requested remand for additional fact-finding. So I don't know again. I'm familiar with this court's precedent and Omari Beholder that it's necessary for me to then request again additional fact-finding it for to be remanded for fact-finding again. With regards to the two PSGs, I do think slow down. I mean Omari is an obstacle, but it wasn't cited by any briefs. So what's your answer to Omari? My answer to Omari is that again, we had already requested additional fact-finding before the board. And so is Ms. Santos then required to file an additional motion to the board saying you shouldn't engage in fact-finding when we've already pointed out that the IJ is the finder of fact and that additional fact-finding needed to be conducted. So I think that it's a slight deviation from Omari with regards to that. And again, if this is a purely legal determination that the board addressed on its own, this court has then also said that if the board inserts an issue as well, that it brings up on its own that it has been exhausted. And I've also somewhat of a loss given the Supreme Court's recent case in Guerrero-Las Barrias essentially saying that undisputed facts, which I think we have undisputed facts in this case, nobody's arguing, more arguing about weight that they should be given or how do they swing, but undisputed facts rising up to meet a legal standard. So perhaps the board could have addressed the rebuttal, but I still don't think that under a de novo review that the analysis would be there for them to have rebut it, especially given that it should have been, the burden should have been placed on the government. On this issue, do you see this? I see this as a fact issue, not a legal issue. And I'm not saying that triggers deference for the government, but it simply is, did they point to something that validly shows she can relocate? Obviously the IJ didn't find it, but they are pointing to a pre-existing, her statement in the transcript. So that my question is, is that a correct statement of the issue before us? And is it a fact issue or a legal issue? Again, I think whether undisputed facts rise to meet a legal standard, it would then be a legal issue before this court. But I do think again, if it becomes a substantial evidence there, the overwhelming evidence that is in the record would compel this court to a different finding. And I see that my time is concluding. So I thank you for your time.